### HUGEL v. HABEL.

(Supreme Court, Special Term, New York County. November 11, 1907.)

1. SPECIFIC PERFORMANCE—CONTRACTS ENFORCEABLE.

Equity will specifically enforce a contract for the purchase of real estate, where the title of the vendor is good at the time of the trial, though defective at the time fixed for performance, and where the vendor has on discovering defects, exercised diligence in remedying the same, and performance will not be inequitable to either party in consequence of a change in their position.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Specific Performance, § 243; vol. 48, Vendor and Purchaser, § 273.]

2. SAME.

The title of a vendor was objected to by the purchaser on the ground that a mortgage assumed by him was payable in installments, while the contract called for a straight mortgage. The vendor induced the mortgagee to agree to accept payment of the mortgage, and was entitled to receive from the purchaser a sum in cash in excess of the amount of the mortgage and arrears of interest. Held, that the purchaser could not defeat specific performance.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Specific Performance, § 243; vol. 48, Vendor and Purchaser, § 273.]

Action by Samuel Hugel against Nathan Habel. Judgment for defendant.

Shapiro & Shapiro, for plaintiff.

I. V. Schavrien (Geo. Hahn, of counsel), for defendant.

NEWBURGER, J. The defendant sold to one Harris, the plaintiff's assignor, certain premises known as "No. 33 West One Hundred and Seventeenth Street" for the sum of $28,500. The contract provided that the purchaser should pay $500 on the signing of the contract, $18,000 by taking the premises subject to a first mortgage for that amount,. $2,500 by taking said premises subject to a second mortgage for that amount, to become due in about 2½ years, and $3,000 by executing a mortgage for that amount. The balance to be paid in cash or by certified check. The contract further provided that the title was to be

closed on the 2d day of July, 1906. This date was subsequently changed to July 5th by consent of the parties. On that day the plaintiff objected to taking title on the ground that the search disclosed the fact that the second mortgage was payable in installments and that the contract called for a straight mortgage. There was some discussion between the parties; the defendant stating that he had informed plaintiff's assignor that the mortgage was payable in installments. The defendant then asked for a reasonable adjournment in order to arrange the payment of the mortgage to the satisfaction of all parties. He asked for three weeks, but plaintiff only consented to a postponement until July 9th. It appears that the defendant procured the consent of the mortgagee to accept payment of the principal of the mortgage. On the adjourned day, July 9th, the attorney for the defendant informed the plaintiff's attorney that he had procured the mortgagee's consent to accept payment of the mortgage, but that it would require a little further time, and asked for a further adjournment, which was refused. The defendant's attorney then offered to return the deposit and pay a reasonable fee for services; but the defendant refused to pay the sum asked by plaintiff's attorney, on the ground that it was unreasonable. Negotiations for a settlement continued for several weeks, and finally, on September 6th, defendant's attorney wrote a letter to plaintiff's attorney, asking him if his client would take title not later than September 10th in accordance with the terms of the contract. To this letter plaintiff's attorney did not reply. Subsequently this action was commenced to impress a lien upon the premises referred to. The defendant in his answer sets up a counterclaim, alleging his ability and readiness to complete the contract and plaintiff's refusal.

In Baumeister v. Demuth, 84 App. Div. 399, 82 N. Y. Supp. 835, it was held:

"It is the practice in equity to require specific performance if the title is good at the time of the trial, even though defective at the time fixed for the performance of the contract, where the vendor has, upon discovering defects, exercised diligence in remedying the same, if there has been no change in the circumstances or position of the parties by which performance will become inequitable or will be to the substantial prejudice of either party."

In this case the objection to the title could easily have been overcome. The mortgagee was willing to accept payment of the principal due him, and it is apparent that if the plaintiff and his attorney, instead of insisting upon their strict legal rights, had displayed an intention to avoid technicalities, the title could have been closed, as by the terms of the contract the defendant was entitled to receive from the plaintiff a sum in cash in excess of the amount of the mortgage and arrearage of interest.

The contention of the plaintiff that his position has been changed in such a manner that specific performance will be excused is not borne out by the evidence. The plaintiff's testimony is vague and uncertain, and his account of loans to his brother and his stock speculations fail to convince me that his position has been so changed as to warrant a denial of defendant's prayer for specific performance of the contract.

Judgment for the defendant for the specific performance of the contract. Submit findings.